OPINION OF THE COURT
Jeffrey Arlen Spinner, J.
Plaintiff has commenced this action claiming a breach of contract, specifically a retainer agreement for the provision of professional legal services. Plaintiffs complaint demands the principal sum of $42,161.49 plus counsel fees of $10,540.37 together with interest at 18% per annum. This matter was electronically filed on July 5, 2012 and a copy of the summons and verified complaint, without the index number or date of filing (a clear violation of the mandatory provisions of CPLR 305 [a]), together with defendant’s pro se answer have been provided to the court. Plaintiff now moves for an order pursuant to CPLR 3212 granting summary judgment. No affidavit of service as required by CPLR 306 has been provided to the court. Defendant has interposed handwritten pro se opposition to the application, which is not insubstantial.
Plaintiffs claim is premised upon a document entitled “THIS IS NOT A FLAT RATE RETAINER” which is dated April 10, 2010 and attached as exhibit B. It provides, inter alia, for an initial payment of $2,500 with billing at the “discounted” rate of $290 per hour. Reviewing the agreement in toto, however, leads the court to the inescapable conclusion that it is indubitably a contract of adhesion. It follows then that such an agreement will be viewed in a light most favorable to the party who is not seeking enforcement. It contains a number of disturbing provisions including but not limited to a waiver of the right to demand a trial de novo following 22 NYCRR part 137 arbitration, waiver of the right of the client to receive billing as to the retainer amount, waiver of the attorney’s obligation to retain the file and documents for seven years, the assertion that any items that are provided to counsel for the benefit of the client’s case become property of the attorney, together with minimum billing amounts.
By way of the instant motion, plaintiff demands a money judgment against defendant in the principal amount of *340 $42,161.49 for legal services purportedly rendered, together with attorney’s fees in the amount of $10,540.37 (25% of the claimed balance due), together with interest thereon at 18% per annum without any articulated basis for this claimed rate. In order to buttress plaintiffs claim, there is appended to plaintiffs motion as exhibit B a document that was doubtless drafted by plaintiff, dated December 7, 2010 and which reads as follows:
“December 7, 2010 To BRYAN L. SALAMONE & ASSOCIATES EC.: I have personally met with you on December 7, 2010 and I have reviewed every single charge, and all work done through November 30, 2010. I do not object to any of the bills or the charges. I acknowledge receipt of every single bill. I believe the bills to be fair and reasonable and I agree to all of the charges as set forth in the bills, /s/ Melissa Cohen Sworn to before me this 7th day of December 2010. /s/ [illegible notary public].”
Since plaintiff claims a balance due as of the date of that exhibit, this presumably is in the nature of some affirmation of indebtedness. There is no indication of the amount claimed due nor any indicia of the circumstances under which it was procured. According to plaintiffs moving papers, this document was executed in connection with a payment arrangement.
In her opposing papers which are dated November 1, 2012, defendant asserts, among other things, that plaintiff stated that the total cost of representation would be in the area of $5,000, that there are “major discrepancies” between time spent and amounts billed, that she was the victim of “massive overbilling” by plaintiff as a result of plaintiffs multiple errors, that she signed papers prepared by plaintiff which would exempt defendant from having the debt discharged in bankruptcy and, most disturbing, that she was compelled by plaintiff to sign papers “under duress.” She describes plaintiff’s principal as “opportunistic in trying to get more money or drop my case.”
The court is decidedly perplexed plaintiff has not filed any reply papers in response to defendant’s opposition, especially in view of the rather serious allegations contained within the opposition.
That having been said, the function of the court upon an application pursuant to CFLR 3212 is that of issue finding, not issue determination. In order for a party to prevail on an application for summary judgment, it must be clear beyond any reasonable dispute that there are no material issues of fact *341 (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395 [1957]). The proponent of a motion for summary judgment must make a prima facie showing of its entitlement to judgment as a matter of law, tendering sufficient admissible evidence to eliminate any material issues of fact from the proceeding (Zuckerman v City of New York, 49 NY2d 557 [1980]). If the movant is successful in meeting the mandate for a prima facie case, only then does the burden shift to the party opposing the application to produce evidentiary proof that is legally sufficient to demonstrate the existence of a material issue of fact (Zuckerman v City of New York).
In the present matter before the court, it is plain that plaintiff has failed to meet its burden of bringing forth sufficient evidentiary proof to make a prima facie showing of entitlement to the relief it seeks. Based upon all of the submissions, it is evident that there are material issues of fact in this matter which preclude the granting of summary judgment (or indeed, any judgment at all) in plaintiffs favor.
Inasmuch as plaintiff has unsuccessfully moved for summary judgment, the provisions of CPLR 3212 (b) permit the court to “search the record” and, if legally efficacious, it may sua sponte grant summary judgment in favor of the non-moving party without the need for a cross motion, provided that the same is confined to the action or causes of action interposed by the moving party (Costello v Hapco Realty, 305 AD2d 445 [2d Dept 2003]; Santagata v Vinegar Hill Group, LLC, 41 AD3d 576 [2d Dept 2007]). While the language of that statute appears to be permissive on its face, there is authority which indicates that searching the record is mandatory (Wilkinson v Skinner, 34 NY2d 53 [1974]).
Upon a careful review of the entire record before the court, it is clear that reverse summary judgment pursuant to CPLR 3212 (b) is appropriate, both legally and factually. For the reasons which follow, reverse summary judgment will be granted in favor of defendant, dismissing this action with prejudice.
Annexed to plaintiffs moving papers as exhibit A is the summons and complaint which was used to commence the present action. As noted above, it bears neither an index number nor a date of filing, in derogation of CPLR 305 (a). This could very well engender confusion on the part of the recipient and indeed might lead to an unnecessary default. In addition, plaintiff has failed to provide the court with the affidavit of service pursuant to CPLR 306 and is therefore deprived of the opportunity to examine same.
*342 More disturbing than the foregoing procedural irregularities (which are curable under CPLR 305) is the express language and demand in the complaint. The complaint bears a sworn verification by Bryan L. Salamone, the president of Bryan L. Salamone, P.C. attesting to the truth of the matters therein contained. The ad damnum clause of the complaint demands a money judgment against defendant “for the sum of $52,701.86 with interest on $42,161.49 at the rate of 18% from February 10, 2012.” A plain reading of this language leads the court to the logical conclusion that plaintiff demands entitlement to interest at 18% per annum on the entire balance claimed to be due and owing from defendant.
Absent a contractual provision which fixes the rate of interest upon an obligation (and subject to various other statutory provisions), the legal rate of interest in New York is 9% per annum, as set forth in CPLR 5004. This is the rate that is applicable to judgments and which courts will award absent any enforceable agreement to the contrary (see CPLR 5001 et seq.).
In the matter that is sub judice, plaintiff demands interest at 18%, twice the statutory maximum for a judgment. The court has examined the agreement between the parties (exhibit B) and finds a provision which states “IF BILLS ARE NOT PAID IN FULL EACH BILLING CYCLE THIS OFFICE WILL CHARGE COMPOUNDING INTEREST AT THE RATE OF ONE AND A HALF PERCENT (1.5%) PER MONTH ON OVERDUE BALANCES.” Simple multiplication reveals that an interest charge of 1.5% monthly equates to an annual rate of 18%. The agreement also permits plaintiff to place it with another attorney for collection of sums claimed due upon default and obligates defendant to pay an additional attorney’s fee of 25% of the balance referred.
An examination of General Obligations Law § 5-501 is instructive in this regard. That statute, subject to certain exceptions which are inapplicable to the present controversy, sets a ceiling of six percent per annum on interest charged “upon the loan or forbearance of any money” (General Obligations Law § 5-501 [1]). The statute further provides, in pertinent part, that “[n]o person or corporation shall, directly or indirectly, charge, take or receive any money, goods or things in action as interest on the loan or forbearance of any money, goods or things in action at a rate exceeding the rate above prescribed.” (General Obligations Law § 5-501 [2].) The practice of charging interest at a rate higher than that allowed by law is usury and any loan or *343 forbearance which is given in excess of the legal rate is deemed to be usurious (Matias v Arango, 289 AD2d 459 [2d Dept 2001]). The Court of Appeals has opined that one of the purposes of the usury statute is to protect persons from the consequences of their personal desperation (Schneider v Phelps, 41 NY2d 238 [1977]).
While one might conceivably argue that the usury statute is inapplicable to a transaction such as the one between these parties, that is clearly not the case. In the matter of Eikenberry v Adirondack Spring Water Co. (65 NY2d 125 [1985]), the Court of Appeals, in a case somewhat similar to the case at bar, found that an agreement to pay attorney’s fees was subject to General Obligations Law § 5-501 and its attendant interest rate ceiling. While the issues between plaintiff and defendant do not constitute a loan, it is the view of this court that based upon the foregoing authority, the agreement between plaintiff and defendant and the issues that have arisen constitute a forbearance which is subject to the provisions of General Obligations Law § 5-501. Accordingly, since the agreement at issue, which was prepared and propounded by plaintiff to defendant, expressly provides for interest at a rate in excess of 6% per annum, the said agreement is found by this court to be usurious.
The court must now make a determination as to the statutory remedy that is applicable to this matter. Section 5-511 (1) of the General Obligations Law decrees that a usurious contract is void ab initio and so continues in perpetuity (Wilkie v Roosevelt, 3 Johns Cas 206 [Sup Ct of Judicature 1802]; Hinman v Brundage, 13 NYS2d 363 [Sup Ct, Delaware County 1939]). Section 5-511 (2) directs that “the court shall declare the same to be void, and enjoin any prosecution thereon, and order the same to be surrendered and cancelled.” (General Obligations Law § 5-511 [2].) The language of the statute is mandatory, leaves no room for judicial discretion and thus requires a declaration by this court that the entire obligation sought to be enforced by plaintiff is null and void, from its inception (Szerdahelyi v Harris, 67 NY2d 42 [1986]).
Accordingly, the court finds that the agreement between plaintiff and defendant is void ab initio, that said agreement is and shall continue to be wholly unenforceable, that the same shall be cancelled and of no further force and effect and that plaintiff shall be barred, enjoined and prohibited from taking any steps to enforce the agreement or any portion thereof.
Accordingly, it is ordered, adjudged and decreed that the application of plaintiff for summary judgment in its favor pursu *344 ant to CPLR 3212 shall be and the same is hereby denied in its entirety; and it is further ordered, adjudged and decreed that upon searching the record, reverse summary judgment pursuant to CPLR 3212 (b) shall be and the same is hereby granted in favor of defendant; and it is further ordered, adjudged and decreed that the agreement between Bryan L. Salamone, EC. and Melissa Cohen dated April 30, 2010 shall be and the same is hereby declared to be null, void, cancelled, void and of no force and effect; and it is further ordered, adjudged and decreed that plaintiff, its successors and assigns shall be and are hereby barred, enjoined and prohibited from enforcing or attempting to enforce the agreement or any portion thereof; and it is further ordered, adjudged and decreed that this action be and is hereby dismissed with prejudice.